## WEISANT v INDIANAPOLIS LIFE INSURANCE CO

Ohio Appeals, 7th Dist, Mahoning Co

Decided Oct 20, 1933

94

William Mason, Youngstown, for plaintiff.

Wilson, Hahn. & Wilson, Youngstown, for defendant.

## OPINION

By POLLOCK, J.

While there were many questions in this case originally, and especially a complicated accounting between these parties, really the only question submitted to this court for determination is whether the defendant rightfully terminated the third contract, and all the contracts, in fact, between these parties, by the letter written on January 16, 1931. After entering into the third contract some time about the 1st of January, or early part of 1930, the defendant appointed a separate agency in this city, and possibly from that arose the friction between these parties. The plaintiff visited this company in Indianapolis because of the troubles growing out of the fact that there was a separate insurance agency established in the city. At that time the plaintiff and defendant entered into what is denominated the supplemental contract. The contract found the amount due each one of unsettled balance between them to March 31, 1930, and it also provided that the contract of November 14, 1929, which was the last agency contract, should by the contract between them, that is reaffirm that contract between them, except such modifications as were made by the supplemental contract. The supplemental contract made no change in the contract of November 14, 1929, affecting the question that we have before us now. §7A in that contract provides:

"In consideration of his remaining in the service of the company and assisting in the preservation of the company's business, and provided he writes paid-for new insurance to the amount of $100,000, or more, each calendar year, the party of the second part shall receive renewal commissions on renewal premiums received in cash by the company on all insurance written by him except as hereinafter provided, as follows:"

Section 19 provided:

"This contract shall not be terminated by the party of the first part, except upon failure or refusal of the party of the second part to comply with any one or more of its provisions, and also to write annually not less than $150,000 of paid-for insurance, in any of which events this contract may be terminated by the party of the first part."

The real question to be determined now is whether the insurance company rightfully terminated this contract, under the provisions of §19, because the plaintiff had not written $150,000 worth of insurance, and that question is the one in which the Common Pleas Court did not agree with the finding of the master. The Common Pleas Court held, in substance, that the company had no right to terminate this contract, and therefore the contract continued and the plaintiff was entitled to a commission on the renewal premiums paid on the insurance he had written to the time of bringing this action.

It is not contended by the plaintiff that he wrote $150,000 worth of insurance during the calendar year before the 16th of January, 1931. He wrote possibly only $93,553, or something short of $100,000, but his claim is that he was interfered with by the defendant and that it did not cooperate. He first claims that the defendant refused to confirm the appointment of at least two sub-agents during the year 1930. The defendant did not appoint certain agents that the plaintiff recommended, or rather confirm the appointment. The contract between plaintiff and defendant provided that the plaintiff should not appoint any agents except by the confirmation of the defendant, so that the defendant had a right to refuse to appoint or confirm agents recommended by the plaintiff if it did it in good faith. Whether the agents that were refused appointment were suitable persons to be appointed need not be determined. There is no evidence in this record that whatever the defendant did in this regard, that it did not act in good faith. The plaintiff has no right to complain on account of defendant's refusal to confirm his agents.

Serious complaint is made in regard to a letter written on June 25, 1930, by the defendant's secretary, directed to its policy holders in Mahoning County. It read as follows, so far as we will now refer to it:

"The Indianapolis Life Insurance Company announces the appointment of Mr. Ford Flood as manager of our Youngstown, Ohio, agency. A branch office of the company has been opened at 817 First National Bank Bldg., in charge of Mr. Flood. By means of this branch office the company desires to keep in close touch with its pol-

icy holders so that their needs and inquiries may receive careful and prompt attention.".

It will be observed that this company is recommending and approving the office and appointment of Mr. Flood. The following part of this letter is an approval, or rather a commendation of this insurance company for what it is doing for its policy holders, so that it in nowise conflicts with or harms the plaintiff, but the first of it did have an effect to direct the attention of the policy holders to whom it was directed, to Mr. Flood and his office and did not mention plaintiff.

The question arises whether there was a violation of plaintiff's contract by the company or not. It is not claimed that the plaintiff had an exclusive right of agency. While he was district agent, these contracts did not give an exclusive right of agency in the district. In the fore part of the summer of 1930, when this supplemental contract was drawn, plaintiff knew of this additional agency, and the friction probably started between this plaintiff and the defendant after the appointment of this agency, but that supplemental contract reaffirmed the contract entered into before between the parties and the contract existing between the parties except as modified. The supplemental contract did not modify the former contract in regard to the right of defendant to appoint other agents. There is no doubt but what plaintiff and defendant were not acting as harmoniously as agent and principal usually do, especially in insurance policies, but we can not say that the action of the defendant in writing this letter was a violation of its contract. While it was not treating the plaintiff with the same consideration as it was treating its new agent, yet it was not violating any contractual relation.

It is further said that the company did not give plaintiff the assistance and encouragement that it is alleged in the petition that it agreed to do. Possibly there is not much in the evidence as to what defendant agreed to do, yet it is a well known fact that insurance companies encourage and assist in any way they can their agents, and we do not think that that was afforded the plaintiff during this year. There was some feeling between them, that the plaintiff and defendant were not working in harmony, but yet we can say that that was such breach of the contract between plaintiff and defendant as would relieve the plain-

tiff from complying with this contract so as to continue by writing $150,000 worth of insurance? The master has found not only the amount that this agent, the plaintiff, wrote that year, which was $93,553, but he also found what the other agents wrote, which was $30,553, so that the combined insurance written by the agent of the defendant in this district did not reach $150,000. We think that the company had a right to terminate this agency contract as it did do on the 16th of January, 1931, which terminated all rights of the plaintiff to receive these commissions.

There is the further question, and this is raised by the defendant, that the agent had no right to receive the commissions on renewals for the year 1930, because he did not write $100,000 worth of insurance, as was provided by his contract. It is true that he did not write the required amount by six thousand and some hundred dollars. The master found that he should in equity be allowed to receive the commissions for these renewals during that year, notwithstanding that he fell short of the amount that was required.

After considering this case we feel that the strict letter of the contract should not be enforced to deprive plaintiff of these commissions during that year. We are following the finding of the master. We feel that the master went through quite a difficult accounting and he has reasoned it out more equitably than we could do with the limited time we necessarily have. We are finding a judgment against the plaintiff in favor of the defendant for $507.59, with interest from December 31, 1932.

We come now to the question of costs in this case. The master finds that the statements and accounting that this company had made to the plaintiff were not sufficient to determine the accounting that should be made between the parties; in other words, he found that it required this action to secure a proper accounting by this defendant. For that reason we have required the defendant to pay the costs up to and at the time of filing of the master's report, which of course includes the master's fee and stenographer's, which are taxed against the defendant and judgment entered against defendant. The remainder of the costs are taxed and judgment entered against the plaintiff.

FARR, POLLOCK and ROBERTS, JJ.